UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CHRISTINE CHEON,

               Plaintiff,

V.

WHOLE FOOD MARKET,

               Defendant.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-5190 (RPK) (LKE)

RACHEL P. KOVNER, United States District Judge:

    Plaintiff, a former Whole Foods employee proceeding *pro se*, has filed this lawsuit alleging employment discrimination. Defendant moved to dismiss for failure to state a claim. Plaintiff has not filed a response. For the reasons explained below, the motion is granted, and the complaint is dismissed with leave to file an amended complaint within thirty days of this order.

## BACKGROUND

    Plaintiff was formerly employed by Whole Foods as an in-store shopper. Compl. 8 (ECF pagination) (Dkt. #1). In a form complaint that incorporates a filing with the Equal Employment Opportunity Commission, plaintiff alleges the following facts. On August 19, 2022—her first day of work—she was denied a name tag. *Id.* at 10. In addition, a supervisor named Jamal engaged in "distracting, interfering, bullying, physically intimidating" behavior, including blocking and following her, invading her personal space, and verbally harassing her with "offensive sexist gender-specific, gender-orientation-specific, and marital status-specific language." *Ibid*.

    Plaintiff was allegedly "delayed and discouraged" from complaining about Jamal to another supervisor, and was "denied privacy" when completing a complaint form. *Ibid.*

1

Plaintiff also alleges that on August 19—again, her first day of work—she "received fewer work hours than her coworkers and was unable to book more hours." *Ibid.*

Two days later she was "denied . . . any correction or updates regarding [her] denied ability to book more hours at the standard release date/time and receipt of fewer work hours than coworkers." *Id.* at 11.

Subsequently, in "late August 2022," plaintiff had a phone call with the person charged with investigating her complaint, Jinah Kim. *Ibid.* During the call, Kim "intimated and bullied" plaintiff, "refused to listen to" her, "screamed over" her, "discredited [plaintiff's] complaint before adequate investigation," and accused plaintiff of violating store policies. *Ibid.*

On August 26, 2022, and on September 4, 2022, plaintiff again allegedly "received fewer scheduled work hours than [her] coworkers." *Ibid.*

Also on September 4, another coworker named John "assaulted [plaintiff] with a shopping cart" and "harassed, intimidated, and menaced" plaintiff. *Ibid.* Plaintiff alleges that she was "denied a written complaint form" to document that incident and was "denied immediate workplace accommodation for [her] safety as a crime victim by management." *Ibid.*

"In early September 2022," a supervisor followed plaintiff and accused her of not doing her job properly. *Ibid.* Around this time, plaintiff was also "initially excluded from the posted list of in-store shoppers assigned to captains for her work shift" and "was falsely accused by Jinah Kim of using the 'f word' at John when [plaintiff] asked him not to touch [her] and [was] sent home on administrative leave." *Ibid.*

On September 11, 2022, plaintiff received an email from another Whole Foods manager stating that she had been terminated, and "refusing to specify any reason beyond 'infraction.'" *Ibid.* Plaintiff alleges that this termination was "scapegoating" her since other employees who had

2

engaged in misconduct—such as Jamal and John—were not "fired for violating store policies and/or the law." *Ibid.* Plaintiff further alleges that she was denied unemployment benefits because Whole Foods made false statements about her reasons for separation. *Ibid.*

Plaintiff's form complaint checks boxes indicating that she alleges employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17; Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 to 634; Americans with Disabilities Act, 42 U.S.C. §§ 12112 to 12117; and state law. *Id.* at 3–4. Her complaint form indicates that the discriminatory conduct plaintiff experienced involved termination of employment, unequal terms and condition of employment, retaliation, and other acts, based on race, color, gender, sex, national origin, age, and disability. *Id.* at 4–5.

Defendant moved to dismiss for failure to state a claim. *See* Mot. to Dismiss (Dkt. #14). Plaintiff has not filed a response. The Court thus treats the motion as fully briefed.

## STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid.* (quoting *Twombly*, 550 U.S. at 556). But it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* In evaluating a motion to dismiss under Rule 12(b)(6), the court

3

must accept all facts alleged in the complaint as true. *Ibid.* But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid.*

The complaint of a *pro se* plaintiff must be "liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotations and citations omitted). *Pro se* status, however, does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks omitted)).

## DISCUSSION

Plaintiff's federal claims are dismissed, and the Court declines to exercise jurisdiction over plaintiff's state-law claims. Plaintiff may file an amended complaint within 30 days.

### I. Federal Claims

#### A. Discrimination Based on Race, Color, Gender, Sex, National Origin, Age, and Disability

Plaintiff has not plausibly alleged that defendant discriminated against her based on race, color, gender, sex, or national origin, in violation of Title VII; based on age in violation of the ADEA; or based on disability in violation of the ADA. At the pleading stage in an employment discrimination action, "a plaintiff must plausibly allege that (1) the employer took adverse employment action against [her], and (2) [her protected characteristic] was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). The plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

Although plaintiff sufficiently alleges that she experienced adverse employment action, including having her employment terminated, she does not allege facts suggesting that her employer took adverse action against her based on a protected characteristic. She neither offers direct evidence of discriminatory intent nor alleges any facts showing that she was treated differently than similarly situated employees based on race, color, gender, sex, national origin, age, or disability. *See Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

Plaintiff also fails to allege a "discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Such an environment involves harassment "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation omitted). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (citation omitted). Here, plaintiff's complaint contains only a single allegation of mistreatment by a Whole Foods employee that she links to a protected characteristic. She alleges that on her first day on the job, a supervisor named Jamal "distract[ed], interfer[ed], bull[ied], and physically intimidated [plaintiff] by blocking [her] way, invading [her] personal space, repeatedly following [her] and verbally harassing and yelling at [plaintiff] using offensive sexist gender-specific [and] gender-orientation-specific" language. Compl. ¶ 10.

This claim falls short on several grounds. First, plaintiff's allegation of "offensive sexist gender-specific, gender-orientation-specific, and marital status-specific language," *ibid.*, sets forth mere "labels and conclusions," *Twombly*, 550 U.S. at 555, as plaintiff provides no clue as to the substance of the "offensive sexist" statements, Compl. ¶ 10.

5

Second, even if plaintiff adequately pleaded that her manager used hostile or abusive language, her description of this single encounter does not constitute a plausible claim of pervasive conduct or conduct so severe that it "works a transformation of the plaintiff's workplace." *Feingold*, 366 F.3d at 150 (alteration adopted and citation omitted). "For sexist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of sexual enmity." *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 458 (S.D.N.Y. 2013) (internal quotation marks and citations omitted), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 Fed. App'x 15 (2d Cir. 2014); *see Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05–CV–5109, 2007 WL 1149979, at *17 (S.D.N.Y. Apr. 18, 2007) (stating that the "occasional use of sexist language does not create a hostile work environment" and collecting cases), *aff'd*, 303 Fed. App'x 942 (2d Cir. 2008)   That plaintiff's manager allegedly blocked her path and followed her within the store—without any physical contact or humiliating behavior—does not elevate this first-day incident into severe and pervasive mistreatment sufficient to transform plaintiff's workplace. *See, e.g.*, *Parisi v. Buffalo Mun. Hous. Auth.*, No. 01-CV-0171E (SR), 2003 WL 21382893, at *4 (W.D.N.Y. Feb. 14, 2003) (holding that plaintiff failed to state a claim for a hostile work environment in alleging that she was repeatedly "blocked" by a coworker who made sexual comments).

And plaintiff's allegations of other occasions when coworkers or managers followed her, confronted her, or—in one instance—assaulted her with a shopping cart, do not support a hostile work environment claim because plaintiff does not plausibly allege any connection between these instances and race, color, gender, sex, national origin, age, or disability.

**B.  Retaliation**

Likewise, plaintiff fails to state a claim for retaliation. "To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer

6

was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted). Protected activity refers to "action taken to protest or oppose statutorily prohibited discrimination." *Benn v. City of New York*, 482 Fed. App'x 637, 638 (2d Cir. 2012) (summary order) (citation omitted).

Here, the closest plaintiff comes to alleging that she engaged in protected activity under one of the anti-discrimination statutes she cites is her statement that she "complet[ed] a complaint form" about her supervisor Jamal. Compl. ¶ 10. But plaintiff does not describe what she said about Jamal in her complaint form. *See ibid.* Accordingly, she does not adequately plead that her complaint would have been reasonably understood to protest "statutorily prohibited discrimination," as necessary to "qualify as protected activity that may give rise to a claim of retaliation." *Benn*, 482 Fed. App'x at 639; *see Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 308–09 (S.D.N.Y. 2009) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally."). Accordingly, plaintiff's existing allegations do not state a claim for retaliation.

## II. State Law Claims

Plaintiff's state law claims are dismissed without prejudice because the Court declines to exercise jurisdiction over them in the absence of a viable federal claim. Generally, where "a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quotation marks and citation omitted). Based on the complaint, there does not appear to be any persuasive reason to depart

from the usual practice of declining to exercise supplemental jurisdiction once federal claims are dismissed. The Court thus therefore dismisses plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is dismissed with leave to file an amended complaint within thirty days of the date of this order. If no amended complaint is filed, the case will be dismissed, and the Clerk of Court will be directed to close the case.

SO ORDERED.

    /s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:  September 30, 2025
       Brooklyn, New York